**RECORD NO. 14-1698**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

_____

HUNTINGTON INGALLS INDUSTRIES, INC.,
f/k/a Northrup Grumman Shipbuilding, Inc.,

*Petitioner,*

v.

RICKY N. EASON;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

_____

ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD
_____

**RESPONSE BRIEF OF RESPONDENT
RICKY N. EASON**
_____

Gregory E. Camden
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, VA 23510
Telephone: (757) 622-8100
Facsimile: (757) 622-8180
gcamden@mkclawyers.com

*Counsel for Respondent*                          October 27, 2014
*Ricky N. Eason*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1698__        Caption: __Huntington Ingalls Industries v. Ricky Eason__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Ricky Eason__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                    ☐ YES ☑ NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____07/18/2014_____

Counsel for: Ricky Eason_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____07/18/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Betty English: english.betty@dol.gov
Thomas Shepherd, Jr.: shepherd.thomas@dol.gov
Jonathan Walker: jwalker@masonwalker.com

_____          _____07/18/2014_____
        (signature)                              (date)

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES………………..……………………………………...ii

STATEMENT OF ISSUES…………………………..………………………………1

STATEMENT OF THE CASE…………………………….…………………………2

PROCEDURAL HISTORY……………………………………...…………………3

STATEMENT OF FACTS………………………………………………..………..5

   SUMMARY OF MEDICAL EVIDENCE…………………………………..7

SUMMARY OF ARGUMENT……………………………………………………...10

ARGUMENT………………………………………………..………………11

I. The *PEPCO* decision concerned a future permanent partial wage earning capacity loss under 33 U.S.C. Section 908(c)(21) and is not germane to the present claim for a temporary partial wage earning capacity loss under 33 U.S.C. Section 908(e).

CONCLUSION……………………………………………………………………..20

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) AND 32(a)…………20

CERTIFICATE OF FILING AND SERVICE…………………………………………21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*DM & IR Ry. Co. v. Director, OWCP,*
    151 F.3d 1120 (8th Cir. 1998)………………………………………....14

*Gilchrist v. Newport News Shipbuilding & Dry Dock Co.,*
    135 F.3d 915 (4th Cir. 1998)………………………………………..14

*Leech v. Service Engineering Co.,*
    15 BRBS 18 (1982)………………………………………...14, 18, 19

*Norfolk Shipbuilding & Drydock Corp. v. Hord,*
    193 F.3d 797 (4th Cir. 1999)………………………………………..19

*Pacific Ship Repair & Fabrications, Inc. v. Director, OWCP [Benge],*
    687 F.3d 1182 (9th Cir. 2012)……………………………………14, 15, 16

*Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs,*
    473 F.3d 253 (6th Cir. 2007)………………………………………16

*Potomac Electric Power Co. v. Director, OWCP,*
    449 U.S. 268 (1980)…………………………………………..*passim*

*Price v. Stevedoring Servs. of Am., Inc.,*
    627 F.3d 1145 (9th Cir. 2010)………………………………………17

*Rowe v. Newport News Shipbuilding & Dry Dock Co.,*
    193 F.3d 836 (4th Cir. 1999)………………………………………..14

*Sinclair v. United Food & Commercial Workers,*
    13 BRBS 148 (1989)………………………………………………12

*Trask v. Lockheed Shipbuilding & Construction Co.,*
    17 BRBS 56 (1985)………………………………………………......12

*Walker v. Todd Pacific Shipyards*,
   46 BRBS 57 (2012)……………………………………………………...19

*Watson v. Gulf Stevedore Corp.*,
   400 F.2d 649 (5th Cir. 1968)………………………………………16, 17

## **STATUTES**

33 U.S.C. Sections 908(c)(1)-(21)………………………………...1, 11, 12, 14

33 U.S.C. Section 908(a)……………………………………...………..13

33 U.S.C. Section 908(b)…………………………………….………13

33 U.S.C. Section 908(c)…………………………………11, 12, 13

33 U.S.C. Section 908(d)……………………………………………13

33 U.S.C. Section 908(e)……………………………………1, 11, 12, 13

33 U.S.C. Section 908(h)……………………………………………14

## RESPONDENT'S RESPONSE BRIEF

The Respondent, Ricky Eason (hereinafter referred to as "Mr. Eason" or "Claimant"), by its undersigned counsel, respectfully submits this brief in opposition to Petitioner's appeal of the Benefits Review Board ("BRB") decision affirming the Administrative Law Judge's ("ALJ") award of benefits. The Petitioner challenges the ALJ's award arguing that under *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268 (1980) ("*PEPCO*"), Claimant is prohibited from obtaining additional compensation for any loss of wage earning capacity because his knee disability had become both permanent and partial; therefore, he is limited to the scheduled award that was previously paid.

For the reasons set forth below, the Fourth Circuit should reject the Petitioner's argument because *PEPCO* does not preclude an award for additional temporary partial disability benefits due to temporary incapacity despite the Employer having paid in full permanent partial disability benefits under the schedule.

## STATEMENT OF ISSUES

The *PEPCO* decision concerned a future permanent partial wage earning capacity loss under 33 U.S.C. Section 908(c)(21) and is not germane to the present claim for a temporary partial wage earning capacity loss under 33 U.S.C. Section 908(e).

1

## STATEMENT OF THE CASE

Mr. Eason injured his right knee on September 28, 2008 and subsequently sought treatment with Dr. Hoang. The Employer accepted Mr. Eason's injury as compensable and paid various periods of temporary total disability benefits. On June 28, 2009 Mr. Eason returned to work full duty with no work restrictions. (JA 128).

From October 16, 2009 to May 17, 2010 and from May 19, 2010 to July 25, 2010, Mr. Eason received permanent partial disability benefits for a 14% disability rating to his right leg. (JA 128).

While working full duty, Mr. Eason was in the process of receiving payment for a 14% permanent partial disability rating when he returned to his treating physician Dr. Hoang in May of 2010 with complaints of right leg pain and swelling in his knee. Dr. Hoang administered a series of injections to alleviate Mr. Eason's pain complaints and assigned light duty restrictions. (JA 75-80, 83-85). The Employer did not offer light duty employment within Mr. Eason's restrictions; therefore, he was passed out of work resulting in him suffering a wage earning capacity loss.

The treatment was successful and Mr. Eason was released to return to full duty employment on August 9, 2010. (JA 75-78). Mr. Eason contends that from the period of May 19, 2010 to August 9, 2010 he was not at maximum medical

2

improvement since he was receiving ongoing medical treatment and was under temporary restrictions from Dr. Hoang after which he improved and returned to full duty thereby, once again returning to maximum medical improvement. Thus, Mr. Eason is entitled to benefits for the alleged time period.

## **PROCEDURAL HISTORY**

On December 6, 2011 Administrative Law Judge ("ALJ") Richard Malamphy entered a Decision and Order which found that Mr. Eason had reached maximum medical improvement as of October 26, 2009, and thus, denied Mr. Eason's entitlement to a later period of temporary total disability benefits. (JA 174-185).

Claimant filed a Notice of Appeal to the Benefits Review Board ("BRB") seeking review of the ALJ's decision arguing that an incorrect analysis was performed and the decision failed to follow legal precedent which states the ALJ must consider whether Claimant's temporary restrictions from May 19, 2010 to August 9, 2010 precluded Claimant from performing his usual work as a pipefitter during that period.

On December 19, 2012 the BRB remanded this matter to the ALJ for further consideration regarding Claimant's restrictions between May 19, 2010 and August 9, 2010 and whether those restrictions precluded Claimant from performing his usual work during this period. Moreover, the BRB found the ALJ failed to

adequately address the Employer's evidence of a labor market survey when he summarily stated that the Employer's vocational expert identified jobs within Claimant's restrictions. The BRB directed the ALJ to compare the duties and requirements of the identified jobs with Claimant's physical restrictions and other vocational factors to determine if the Employer identified the availability of suitable alternate employment. (JA 186-191).

Thus, the issue on remand was whether Mr. Eason was unable to perform his usual work as a pipefitter based upon his work related knee restrictions which arose as a result of his work related injury. If the ALJ finds that Mr. Eason established a *prima facie* case of disability, then a determination as to whether the Employer met its burden of demonstrating the availability of suitable alternate employment which Mr. Eason can perform given his work restrictions must be made.

On August 20, 2013 the ALJ issued a Decision and Order on Remand finding that Mr. Eason's temporary restrictions from May 19, 2010 through August 20, 2010[1] would prevent him from performing his former work as a pipe fitter which required climbing, crawling, stooping, and vertical ladders. Thus, Claimant

---

[1] The right knee restrictions were written to end on August 20, 2010. (JA 78). However, Mr. Eason returned to work on August 10, 2010. (JA 18, 97, 215). Therefore, Mr. Eason claimed temporary total disability from May 19, 2010 until August 9, 2010. (JA 12, 18, 23, 181, 193). When reversing the ALJ's initial decision, the BRB and the second ALJ's decision erroneously awarded compensation from May 19, 2010 until August 20, 2010. (JA 18, 202).

established that he could not return to his former job between May 19, 2010 and

August 20, 2010. The ALJ found that the Employer established that Claimant had a

residual wage earning capacity of $232.00 per week. Pursuant to 33 U.S.C. Section

908(e), the ALJ determined that Mr. Eason was entitled to temporary partial

disability benefits at a compensation rate of $845.82 per week from May 19, 2010

through August 20, 2010. (JA 192-207).

On September 19, 2013 the Employer appealed the Decision and Order on

Remand arguing that the ALJ failed to abide by the legal precedent established in

*Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268 (1980)("PECO").

(JA 208-211).

On May 16, 2014 the BRB issued a Decision and Order rejecting the

Employer's legal challenge of the sufficiency of the ALJ's decision finding that the

ALJ properly applied the law. Specifically, the BRB found that "*PEPCO* does not

preclude an award for additional temporary partial disability benefits due to a

worsening of a claimant's work injury, despite the Employer having paid in full

permanent partial disability benefits under the schedule." (JA 216).

## STATEMENT OF FACTS

Mr. Eason is fifty-one (51) years old, high school educated man, who has

worked as a pipefitter for the Employer for thirty-one (31) years. (JA 15). Mr.

Eason lives in Gates, North Carolina, which he described as a community of

5

approximately 1,000 residents. It is a "very small, small county," and about 51 miles from the shipyard in Newport News, Virginia. (JA 20). Mr. Eason described his job as a pipefitter involving a lot of climbing vertical ladders, crawling, stooping, and lifting the heaviest item over sixty (60) pounds. (JA 17).

On September 20, 2008 Mr. Eason sustained a compensable injury by accident to his right knee. (JA 16). Mr. Eason initially treated with Dr. Thomas Stiles who subsequently retired and referred him to Dr. Hoang. (JA 16). Dr. Hoang prescribed physical therapy, reviewed objective testing of an MRI, and diagnosed Mr. Eason as having a torn meniscus. Dr. Hoang recommended that Mr. Eason undergo knee surgery. (JA 17).

The Employer paid temporary total disability benefits from October 2, 2007 to June 28, 2009. (JA 17). Mr. Eason returned to work full duty on June 30, 2009 and continued to work in that capacity until May 18, 2010. (JA 17-18). At that time, Mr. Eason noticed that his knee began to swell prompting a need to return to Dr. Hoang. (JA 18). Dr. Hoang administered a series of injections and placed Mr. Eason on work restrictions. (JA 18). Mr. Eason returned to full duty on August 10, 2010 and has been working in that capacity since. (JA 18).

While Mr. Eason was out of work, he was contacted by Mr. Arehart, a vocational counselor, to provide vocational services. Mr. Eason met with Mr. Arehart five or six times a week to assist in securing employment. Mr. Eason went

to six to ten different jobs opportunities but none would hire him. (JA 19).

Ultimately, Mr. Eason was able to return to his pre-injury employment on August

10, 2010. (JA 19).

## SUMMARY OF MEDICAL EVIDENCE

On October 1, 2008 Mr. Eason visited the Shipyard clinic complaining of

knee pain after a work related incident on September 28, 2008. (JA 130). Mr.

Eason then treated with Dr. Thomas Stiles on October 14, 2008 with complaints of

right knee pain due to a fall at work. An MRI and x-rays revealed a posterior horn

tear of the medial meniscus. Dr. Stiles ordered a knee brace and Mr. Eason was

placed out of work and referred to another physician. (JA 152).

Thereafter, Mr. Eason began treating at Wardell Orthopedics on October 30,

2008. (JA 136). Dr. Hoang confirmed that the MRI dated October 3, 2008 revealed

a medial meniscal tear of the posterior horn and suggested that Mr. Eason wear a

hinged knee brace on his right knee and undergo a right knee arthroscopy with

partial medial meniscectomy. Dr. Hoang placed Mr. Eason on sedentary work

only. (JA 136-137).

On November 20, 2008 Mr. Eason returned to Dr. Hoang and reported that

his right knee

was sore. Dr. Hoang stated that Mr. Eason only needed to wear the brace when he was walking around. Dr. Hoang continued to recommend sedentary work. (JA 137).

On December 11, 2008 Mr. Eason continued to report soreness in his right knee. It was noted that surgery was scheduled for the beginning of January 2009. Mr. Eason was advised to continue with sedentary work. (JA 137). On January 7, 2009 Mr. Eason underwent a right knee arthroscopy. (JA 138-140). On January 15, 2009 Mr. Eason reported some soreness when he returned for a follow-up visit. Dr. Hoang ordered physical therapy and placed Mr. Eason completely out of work. (JA 137).

Mr. Eason continued physical therapy and treated with Dr. Hoang on March 31,

2009 and April 21, 2009. On April 21, 2009 Dr. Hoang assigned work restrictions of no lifting more than 30 pounds and push or pull no more than 50 pounds. (JA 141). Thereafter, Dr. Hoang injected Mr. Claimant's right knee with Hyalgan on May 4, 11, 18, 27 and June 3, 2009. (JA 141-142).

On June 23, 2009 Mr. Eason reported to Dr. Hoang that his knee was doing better since the injections. Dr. Hoang released Mr. Eason back to full duty as of June 29, 2009. (JA 142, 144).

On August 25, 2009 Mr. Eason reported continuing soreness of his knees. Dr. Hoang discussed getting a disability rating for Mr. Eason's knee. (JA 143, 145). Mr. Eason was evaluated at Tidewater Physical Therapy on September 23, 2009 and assigned a 14% lower extremity impairment rating. (JA 146-147).

On October 26, 2009 Mr. Eason advised Dr. Hoang that his knee continued to get sore. Dr. Hoang advised Mr. Eason to continue with activity as tolerated and return in three months for

a repeat evaluation and consideration of injections if he was still symptomatic. (JA 143).

Mr. Eason returned to see Dr. Hoang on May 18, 2010 and reported that his left knee was acting up and his right knee was getting stiff intermittently, especially after sitting for a long period of time. (JA 143). Dr. Hoang injected Mr. Eason's right knee with Marcaine and Depo-Medrol and scheduled an MRI for his left knee. Dr. Hoang assigned temporary restrictions of no lifting more than 10 pounds, no climbing vertical or inclined ladders and stairs, no crawling, no kneeling, no squatting, and occasional bending, standing and twisting. Mr. Eason was also able to push/pull with hands and arms and use foot controls on a frequent basis. (JA 75).

On May 21, 2010 Mr. Eason reported increasing pain and stiffness in his right knee and Dr. Hoang found marked medial and lateral joint line pain upon

9

examination. Dr. Hoang injected Marcaine and Depo-Medrol in Mr. Eason's knee. (JA 148).

On June 3, 2010 Mr. Eason advised Dr. Hoang that his left knee still hurt but his right knee was improving. (JA 148). Dr. Hoang ordered Mr. Eason to continue with the same work

restrictions previously assigned in May of 2010. (JA 76, 149).

A June 24, 2010 MRI revealed osteoarthritic changes in Mr. Eason's left knee. Dr. Hoang administered an injection in his left knee. On July 16, 2010 Mr. Eason reported that his right knee was doing well but his left knee was grinding. (JA 149). Dr. Hoang recommended that Mr. Eason continue with light duty, noting additional restrictions of no heavy machinery because it stresses the lower extremity. These restrictions were extended from July 16, 2010 until August 20, 2010. (JA 78).

On August 9, 2010 Mr. Eason's condition improved to the point where he returned to full duty work with the Employer.

## **SUMMARY OF ARGUMENT**

Under *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268 (1980) ("*PEPCO*"), Claimant is prohibited from obtaining additional compensation for any loss of wage earning capacity because his knee disability had become both permanent and partial; therefore, he is limited to the scheduled award that was

10

previously paid. However, *PEPCO* does not preclude an award for additional temporary partial disability benefits due to temporary incapacity despite the Employer having paid in full permanent partial disability benefits under the schedule. Moreover, PEPCO addressed the issue of future permanent partial wage capacity loss under 33 U.S.C. Section 908(c)(21) whereas this issue involved benefits being awarded under 33 U.S.C. Section 908(e).

## **ARGUMENT**

I.   **The *PEPCO* decision concerned a future permanent partial wage earning capacity loss under 33 U.S.C. Section 908(c)(21) and is not germane to the present claim for a temporary partial wage earning capacity loss under 33 U.S.C. Section 908(e).**

The Employer presents a question as to whether a Claimant who has reached maximum medical improvement may later claim additional temporary disability. The Employer argues that the finding in *Potomac Electric Power Co. v. Director, OWCP, ("PEPCO")*, 449 U.S. 268 (1980), that a worker who receives permanent partial disability benefits under a scheduled injury is not entitled to additional benefits for a subsequent temporary loss of wage earing capacity.

Essentially, the Employer argues that because Mr. Eason suffered a scheduled injury he is only entitled to benefits based on the schedule in 33 U.S.C. Section 908(c) of the Act and under *PEPCO* he is prohibited from receiving additional benefits.

11

The schedule is only applied when a Claimant has a permanent partial disability after reaching maximum medical improvement. *PEPCO*; *Sinclair v. United Food & Commercial Workers,* 13 BRBS 148 (1989); *Trask v. Lockheed Shipbuilding & Construction Co.,* 17 BRBS 56 (1985).

In *PEPCO* the Supreme Court addressed compensation regarding a Claimant's permanent partial disability. Specifically, the Court stated "if the injury is of a kind specifically identified in the schedule set forth in §§8(c)(1)-(20) of the Act, 33 §§908(c)(1)-(20) [33 USCS §§908(c)(1)-(20)], the injured employee is entitled to receive two-thirds of his average weekly wages for a specific number of weeks, regardless of whether his earning capacity has actually been impaired." 449 U.S. at 269, 14 BRBS at 363.

In *PEPCO*, the Claimant suffered a left knee injury resulting in a 5 to 20% permanent impairment to his leg. The Claimant argued that this earning capacity was impaired by 40% and that he should be allowed compensation for an unscheduled injury in order to avoid incongruous results. 449 U.S. at 271-72, 14 BRBS at 364. The Court nonetheless limited his recovery to the scheduled amount. 449 U.S. at 284, 14 BRBS 369-70.

The Courts analysis in *PEPCO* was confined to 33 U.S.C. §908(c), but the benefits claimed and awarded in this case were under 33 U.S.C. §908(e) and therefore *PEPCO* is not relevant to a determination in this matter.

Specifically, the Court in *PEPCO* stated, "[t]he language of the Act plainly supports the view that the character of the disability determines the method of compensation. Section 8 identifies four different categories of disability [Permanent Total §908(a); Temporary Total §908(b); Permanent Partial §908(c); Temporary Partial §908(e)][2] and separately prescribes the method of compensation for each."

The Court then began their analysis of §908(c). The Court never addressed §908(e) which is the section under which benefits were sought and awarded in this matter.

Here, Mr. Eason argues that the BRB was correct in determining that even though permanent partial disability benefits were paid under the schedule, it is not determinative of a Claimant's entitlement thereafter to permanent total, temporary total, or temporary partial disability benefits. (JA 188-189). Thus, Mr. Eason is entitled to benefits from May 19, 2010 to August 9, 2010.

On May 19, 2010 Claimant experienced a flare-up in his knee pain and was placed on work restrictions of lifting no more than 10 pounds; no climbing, crawling, kneeling, or squatting; occasional bending, standing, and twisting; and frequent pushing/pulling and foot controls. He was also restricted from operating heavy machinery due to stress on his lower extremity. (JA 75).

---

[2] §928(d) concerns death benefits.

The Supreme Court's decision in *PEPCO* holds that the schedule is the exclusive remedy for compensating a Claimant for permanent partial disability to parts of the body enumerated therein. *PEPCO,* 449 U.S. at 272. Such a Claimant may not receive an award under Section 8(c)(21), (h), 33 U.S.C. §908(c)(21), (h), for a loss of wage earning capacity. *See Rowe v. Newport News Shipbuilding & Dry Dock Co.,* 193 F.3d 836, 33 BRBS 160(CRT) (4th Cir. 1999); *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.,* 135 F.3d 915, 32 BRBS 15 (CRT) (4th Cir. 1998). However, it is well established that a Claimant is not limited to an award under the schedule when an injury to a scheduled member results in total disability. *Id.,* 449 U.S. at 227 N. 17; *see DM & IR Ry. Co. v. Director, OWCP,* 151 F.3d 1120, 32 BBS 188(CRT)(8th Cir. 1998).

Thus, although Claimant's knee condition became permanent on October 26, 2009, recent law holds that such a conclusion does not preclude a finding that a Claimant is entitled to additional temporary benefits as a result of a work related injury. *Pacific Ship Repair & Fabrications, Inc. v. Director, OWCP [Benge],* 687 F.3d 1182 , 46 BRBS 35 (CRT)(9th Cir. 2012); *Leech v. Service Engineering Co.,* 15 BRBS 18 (1982).

In *Benge*, the United States Court of Appeals for the Ninth Circuit held that an employee with a permanent partial disability could be "reclassified" as temporarily totally disabled during a period of recovery following surgery. *Benge,*

14

687 F.3d 1182, 46 BRBS 35 (CRT). The Employer argues that the Ninth Circuit's

decision in *Benge* is legally and factually distinguishable and is contrary to law.[3]

However, despite the Employer's argument to the contrary, this case is

instructive in situations involving a temporary exacerbation of a permanent

condition especially considering that case law discusses only the transformation of

a disability from temporary to permanent.

The *Benge* Court addressed the notion that a disability may transform from

temporary to permanent once maximum medical improvement is reached.

Consideration was given as to whether transformation from permanent to

temporary also passes muster. The Court reasoned that:

> "[t]he notion that a "permanent" disability is immutable has common-sense
> and linguistic appeal; re-characterization of a once-permanent disability as
> temporary may seem absurd. On the other hand, the fallacy of holding initial
> characterizations to be immutable is also apparent if a once-permanent
> disability improves or is completely cured, whether due to a remarkable
> recovery, advances in medical science, or other reasons. In other words, re-
> characterization of a disability may be necessary due to changed
> circumstances. Pacific's position that permanency is not a "fluid concept"
> ignores temporal changes."

Other circuits have also endorsed re-characterization of a disability based on

changed circumstances. For instance, the Sixth Circuit found that: "If an

employee's condition does improve after he or she has been determined to be

---

[3] If we follow the Employer's argument to conclusion, once a worker has been
found to be permanently and totally disabled, an Employer would not be able to
file a modification request based on the Claimant's physical condition
improvement or employment being found for the injured worker.

permanently disabled," the employer may have the employee's condition reevaluated. *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs*, 473 F.3d 253, 259 n.1 (6th Cir. 2007); *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir. 1968)("The determination that Watson is permanently disabled does not foreclose the possibility that his condition may change.").

Thus, the Ninth, Sixth, and the Fifth Circuits have all considered that the initial determination of the nature or the degree of the disability cannot be cast in stone and are subject to consideration based upon changed circumstances. Therefore, a disability that was initially deemed permanent is not immutably so and is subjected to change based upon the circumstances.

Here, an initial finding of medical stability warranted reassessment based upon the changed circumstance of swelling and painful knee complaints, the assignment of temporary restrictions, and ongoing medical treatment such as steroid injections and follow up appointments.

As stated in *Benge:*

Nothing in the Longshore Act limits re-characterizations to a one-way street from temporary to permanent; instead, the statute's broad thoroughfare allows for two-way traffic.

This interpretation of the Longshore Act is consistent with the Director's position, which is cogently summarized in his brief:

For more than two decades, the Director has consistently taken the view in administrative proceedings-and the Board has consistently held-that a permanent disability may become temporary during a period of exacerbation and healing of the underlying condition, regardless of whether the condition will be cured.

We "accord considerable weight to the construction of the statute urged by the Director of the Office of Workers' Compensation Programs, as he is charged with administering it. We will defer to the Director's view unless it constitutes an unreasonable reading of the statute or is contrary to legislative intent." *Price v. Stevedoring Servs. of Am., Inc*., 627 F.3d 1145, 1148 (9th Cir. 2010) (internal quotation marks and citations omitted).

Mr. Eason argues that the Fourth Circuit should consider the potential for improvement of a condition and not on the prospect of a complete cure of the underlying injury as the decisive factor in determining whether a disability should be categorized as temporary under the Longshore Act. This view is consistent with the Act as "recovery merely awaits a normal healing period" is the definition of a temporary disability. *Watson,* 400 F.2d at 654.

Characterizing an individual as temporarily disabled while he undergoes a healing process comports with the view that a disability is temporary "so long as there [is] a possibility or likelihood of improvement through normal and natural healing." *Stevens*, 909 F.2d at 1259 (citing *Watson*, 400 F.2d at 654).

"[A]lthough a temporary total award will subsume a permanent partial award for the same injury, an underlying permanent disability does not disappear during periods of temporary exacerbation. It stands to reason that if Claimant is adjudged to have reached a state of permanent disability, a subsequent temporary

17

exacerbation will not necessarily alter that finding. The 10 percent permanent partial disability finding in the instant case presupposed that Claimant would retain at least a 10 percent partial disability, even though his condition might deteriorate either temporarily or permanently. *Leech v. Serv. Eng'g Co*., 15 B.R.B.S. 18, 22 (1982). The Board reasoned that even though the permanent disability itself persists through periods of "temporary exacerbation," an *award* for temporary total disability "will subsume" an award for a permanent partial disability stemming from the same injury because a total disability presupposes the loss of all wage-earning capacity. *Id*. at 21-22. The Board thus drew a critical difference between Longshore Act awards for temporary and permanent disabilities, and the disabilities themselves. Thus, *Leech* supports the determination that Mr. Eason was temporarily disabled under the Act because he lost all wage-earning capacity.

This issue centers on transformation of a permanent disability into a temporary disability and based upon caselaw, the BRB correctly affirmed the ALJ's decision to award benefits. Thus, a prior finding of partial permanent disability benefits does not preclude a later finding of temporary disability for the same underlying injury during a period of recovery following a flare up of symptoms.

Mr. Eason's disability status although considered permanent when he reached maximum medical improvement, could still be properly re-characterized

as a temporary total disability in accordance with changed circumstances. Thus, the Employer is responsible for temporary total disability payments as awarded by the BRB.

Therefore, the fact that permanent partial disability benefits were paid under the scheduled is not determinative of a Claimant's entitlement thereafter to permanent total, or temporary partial disability benefits. *PEPCO,* 449 U.S. at 277, 14 BRBS at 366, *Benge*, 687 1182, 46 BRBS 35 (CRT); *Walker v. Todd Pacific Shipyards*, 46 BRBS 57 (2012); *see also Norfolk Shipbuilding & Drydock Corp. v. Hord,* 193 F.3d 797, 33 BRBS 170(CRT) (4th Cir. 1999); *Leech*, 15 BRBS 18.

Here, the temporary restrictions from May 19, 2010 through August 9, 2010 would prevent Mr. Eason from performing his former work. Claimant's medical restrictions clearly prevented him from performing the work of a pipefitter, which required climbing, crawling, stooping, and vertical ladders. Mr. Eason has thus established that he could not return to his former job between May 19, 2010 and August 9, 2010.

The BRB made a proper determination in this case and Mr. Eason is entitled to temporary partial disability benefits.

## **CONCLUSION**

The Respondent respectfully submits that the United States Court of Appeals for the Fourth Circuit affirm the Benefits Review Board's decision awarding benefits.

Respectfully Submitted,

/s/_____
Gregory E. Camden, Esquire
VSB #: 36954
425 Monticello Avenue
Norfolk, Virginia 23510
Phone #:  (757) 622-8100
Fax #:      (757) 622-8180
Email:     gcamden@mkclawyers.com
Counsel for Respondent Ricky N. Eason

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief has been prepared in Microsoft Word, Times New Roman, 14 point, a proportionally spaced font and contains 4,316 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/_____
Gregory E. Camden, Esquire
Counsel for Respondent Ricky N. Eason

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 27th day of October, 2014, this Brief of

Respondent was filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Matthew Boyle, Esquire
Mark A. Reinhalter, Esquire
U.S. Department of Labor
N-2117
200 Constitution Avenue, NW
Washington, DC 20210

*Counsel for Respondent, Director,*
*Office of Workers' Compensation Programs,*
*United States Department of Labor*

Jonathan Walker, Esquire
Mason, Mason, Walker, Hedrick
11848 Rock Landing Drive, Suite 201
Newport News, Virginia 23606

*Counsel for Petitioner, Huntington Ingalls Industries, Inc.*

I further certify that on this 27th day of October, 2014 the required copies of

the Brief of Respondent was hand filed with the Clerk of Court.

/s/_____
Gregory E. Camden, Esquire
Counsel for Respondent Ricky N. Eason